IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Claudia Teresita Valdez Lopez, | : | |
| | : | Case No. 1:26-cv-68 |
| Plaintiff, | : | |
| | : | |
| v. | : | Judge Susan J. Dlott |
| | : | |
| Kevin Raycraft, Field Director of Detroit | : | |
| Field Office, United States Immigrations | : | Order Granting Petition for Writ of |
| and Customs Enforcement, *et al.*, | : | Habeas Corpus |
| | : | |
| Defendants. | : | |

This matter is before the Court on the Petition for Writ of Habeas Corpus ("Habeas Petition") filed by Petitioner Claudia Teresita Valdez Lopez.  (Doc. 1.)  Valdez Lopez, a Guatemalan citizen, challenges her detention at the Butler County, Ohio Jail in the custody of Respondents, including the Immigration and Customs Enforcement ("ICE").  She argues that she is being unlawfully held and denied a constitutionally adequate custody redetermination hearing—a bond hearing—in a misapplication of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1225(b)(2)(A) and 1226(a).  This Court joins other courts in holding that detainees like Valdez Lopez, who entered the country without inspection more than eleven years ago, are entitled to a bond hearing under § 1226(a).  For the reasons that follow, the Court holds that Valdez Lopez's continued detention without a bond hearing violates the INA and her due process rights.

**I.      BACKGROUND**

**A.      Factual History**

Valdez Lopez, a Guatemalan national born in 1993, entered the United States in or about

1

July 2014 without admission or parole.  (Doc. 1 at PageID 1, 11; Doc. 14 at PageID 55.)  She has resided in the State of Ohio since her arrival in the United States, and she cares for her four United States citizen children, including one child who suffers from a bone disease called osteotomy.  (Doc. 1 at PageID 1.)  She had no interactions with ICE or immigration services prior to November 2025.  (*Id.* at PageID 2.)

Valdez Lopez was arrested by the Dayton, Ohio Police Department for resisting arrest and obstructing official business in October 2025.  (Doc. 14-3 at PageID 81–84.)  Subsequently, on November 4, 2025, she pleaded guilty to obstructing official business, a second-degree misdemeanor.  (*Id.*)  The resisting arrest charge was withdrawn.  (*Id.* at PageID 83.)[1]

Respondents took Valdez Lopez into federal custody on November 5, 2025 after being contacted by the Dayton Police.  (Doc. 14 at PageID 56.)  The Department of Homeland Security ("DHS") served her with a Notice to Appear before an Immigration Judge of the Department of Justice ("DOJ") in Cleveland, Ohio on December 5, 2025.  (Doc. 14-2 at PageID 77.)  On the Notice to Appear form, DHS checked the box stating that Valdez Lopez was "an alien present in the United States who has not been admitted or paroled."  (*Id.*)  DHS did not check the two alternative boxes stating that she was "an arriving alien" or that she had been "admitted to the United States, but [was] removable for the reasons stated below."  (*Id.*)  DHS made the following allegations:

1. You are not a citizen or national of the United States;

2. You are a native of GUATEMALA and a citizen of GUATEMALA;

---

[1]  Valdez Lopez appeared to dispute in her proceedings before the Immigration Judge that she had been arrested.  (Doc. 14-4 at PageID 87; Doc. 14-6 at PageID 96.)  But it is unclear how she was taken into custody by Respondents if she was not first arrested or whether she even disputes the arrest in these proceedings.  Significantly, neither party asserts that the fact of her arrest is relevant to the outcome of this Habeas Petition.

3. You entered the United States at or near Unknown location, on or about unknown date;

4. You were not then admitted or paroled after inspection by an Immigration Officer.ORAt [*sic*] that time you arrived at a time or place other than as designated by the Attorney General.

5. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act; and/or

6. You are an immigrant not in possession of a valid unexpired passport, or other suitable travel document, or document of identity and nationality.

(Doc. 14-2 at PageID 77, 80.)

Valdez Lopez filed a motion for a custody redetermination hearing—a bond hearing—before the Immigration Judge on December 3, 2025.  (Doc. 14-4 at PageID 85–90.)  She argued that was "eligible for cancelation of removal and [was] also eligible to file for a U visa based on being the victim of domestic violence and has helped the police investigate the crime." (*Id.* at PageID 87.)  The Immigration Judge denied the request for a bond hearing finding that she did not have jurisdiction to grant a bond hearing based on the "precedential decision" by the Board of Immigration Appeals ("BIA") in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA Sept. 5, 2025).  (Doc. 14-5 at PageID 91.)  The BIA held in *Matter of Yajure Hurtado* that noncitizens who are present in the United States without admission are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) without bond during the duration of their removal proceedings.  29 I&N Dec. at 220, 229.  The Immigration Judge also made an alternative finding that Valdez Lopez was "a flight risk and a danger to the community due to her recent criminal charges." (*Id.* at PageID 92.) [2]  Valdez Lopez moved for reconsideration of that decision, but the Immigration

---

[2]  The state court criminal docket sheet indicates that the obstructing official business charge to which Valdez Lopez pleaded guilty is a second-degree misdemeanor.  Ohio law provides that obstructing official business can be charged as a fifth-degree felony if the offender "creates a risk of physical harm to any person."  Ohio Rev. Code § 2921.31(B).  Valdez Lopez was not charged with a fifth-degree felony;

Judge again denied her request for a bond hearing in an Order dated January 7, 2026.  (Doc. 14-6 at PageID 94–99; Doc. 14-7 at PageID 118.)  The Immigration Judge stated that she "lacked jurisdiction to redetermine bond" and alternatively that if she did have jurisdiction, "the Court would deny bond as the Respondent is a danger to the community."  (Doc. 14-7 at PageID 118.)[3] Valdez Lopez appealed the denial of bond hearing to the BIA on February 3, 2026.  (Doc. 14-8 at PageID 120.)

On February 5, 2026, the Immigration Judge issued an Order holding that Valdez Lopez was "removable" and denying Valdez Lopez's application for "Cancellation of Removal for Nonpermanent Residents under INA § 240a(b)(1) [8 U.S.C. § 1229b]."  (Doc. 14-9 at PageID 123–126.)[4]  The Immigration Judge also stated that Valdez Lopez had applied for a "post-conclusion voluntary departure under INA § 240B [8 U.S.C. § 1229c]," and she ordered Valdez Lopez to depart by April 6, 2026.  (*Id.* at PageID 124.)[5]  Valdez Lopez also appealed that Order to the BIA, where it remains pending.  (Doc. 14-10 at PageID 127–134.)

**B.**     **Procedural Posture**

Valdez Lopez filed her Habeas Petition under 28 U.S.C. § 2241 on January 23, 2026 against Respondents Kevin Raycraft, Director of Field Removal Operations, Detroit Field Office of ICE; Todd Lyons, Acting Director of ICE; Kristi Noem, Director of DHS; and Pam Bondi, the

---

that is, she was not charged with creating a risk of physical harm to any person.  (Doc. 14-3 at PageID 81–84.)

[3]  The Immigration Judge did not state upon whom she had placed the burden of persuasion or what evidence she considered in reaching the alternative finding.

[4]  Section 1229a governs removal proceeding before an immigration judge, while § 1229b(b) allows for the "[c]ancellation of removal . . . for certain permanent residents."  8 U.S.C. §§ 1229a, 1229b.

[5]  Section 1229(c) provides that the Attorney General can permit aliens to voluntarily depart in lieu of undergoing removal proceedings.  8 U.S.C. § 1229c.

Attorney General. (Doc. 1.)[6] She alleges that Respondents have unlawfully detained her without an individualized bond hearing. She alleges that Respondents have wrongfully asserted that her detention is governed by 8 U.S.C. § 1225(b)(2)(A)—which requires mandatory detention—when, in fact, her detention is governed by 8 U.S.C. § 1226(a)—which provides for discretionary detention and an individualized bond hearing. (*Id.* at PageID 5–11.) She contends that this Court should reject the BIA's erroneous determination in *Matter of Yujure Hurtado* that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)A) and are ineligible for bond hearings. (*Id.* at PageID 8.) Valdez Lopez also specifically asserts that she should not be required to exhaust administrative remedies in this case because waiver is appropriate in the context of immigration habeas petitions and because exhaustion of remedies would be futile. (*Id.* at PageID 12.)

Valdez Lopez asserts three claims for relief in the Habeas Petition: (1) violation of procedural due process under the Fifth Amendment to the United States Constitution; (2) violation of substantive due process under Fifth Amendment to the United States Constitution; and (3) violation of the INA. (Doc. 1 at PageID 14–17.)

Respondents filed their Return of Writ on February 27, 2026 asserting that the Habeas Petition should be denied. (Doc. 14.) They assert that Valdez Lopez is being properly detained under 8 U.S.C. § 1225(b)(2)(A) and that her due process rights are not being violated. (*Id.* at PageID 58–63.) They also assert that Valdez Lopez must exhaust administrative remedies before seeking habeas relief. (*Id.* at PageID 71–72.)[7]

---

[6] All of the named officers are sued in their official capacities only. (Doc. 1 at PageID 3–4.)

[7] They also attempt to refute an argument made by Valdez Lopez's attorney in the immigration proceedings that *Matter of Yujure Hurtado* is not controlling in her case because she is a member of the class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.). However, Valdez Lopez did not assert in the Habeas Petition here that she is a class member of or entitled to relief

Finally, Valdez Lopez responded to the Return of Writ by filing a Reply on March 5, 2026. (Doc. 15.)

## II.    LAW AND ANALYSIS

The Court first will address the threshold issue of whether administrative exhaustion is required. Then the Court will turn to the merits of the primary issue here: whether Valdez Lopez's detention is governed by 8 U.S.C. § 1225(b)(2)(A)—in which case detention is mandatory—or by 8 U.S.C. § 1226(a)—in which case Valdez Lopez is eligible for a bond hearing. Finally, the Court will examine the merits of Valdez Lopez's due process claims.

### A.    Exhaustion of Administrative Remedies

Respondents contend that the Habeas Petition should be dismissed because Valdez Lopez did not exhaust her administrative remedies. Valdez Lopez's appeal to the BIA of the Immigration Judge's denial of her request for a custody redetermination—a bond hearing—remains pending. Valdez Lopez responds that exhaustion is not mandatory and should be excused in this case. She also contends that requiring exhaustion would be futile here because the BIA is still applying *Matter of Yajure Hurtado* to deny bond hearings. For the reasons below, the Court will not require prudential exhaustion in this case.

Generally, a petitioner must exhaust administrative remedies before filing a habeas corpus petition under 28 U.S.C. § 2241, although the statute itself does not expressly contain such a requirement. *McCarthy v. Madigan*, 503 U.S. 140, 144–145 (1992), *superseded by statute as stated in Woodford v. Ngo*, 548 U.S. 81 (2006). The decision to require exhaustion is within the discretion of the district court when it is not mandated by statute. *Velasco-Sanchez v. Raycraft*, No. 2:25-cv-13730, 2025 WL 3553672, at *5 (E.D. Mich. Dec. 11, 2025) (citing

under *Maldonado Bautista*. The Court need not and will not address the potential applicability of *Maldonado Bautista*.

*McCarthy*, 503 U.S. at 144).

There is no clear statement from Congress "that exhaustion is required before a noncitizen seeks habeas review to challenge pre-removal detention[,]" as here.  *Salvador F.-G.*, 2025 WL 1669356, at \*6; *see J.C.G. v. Genalo*, No. 1:24-cv-08755 (JLR), 2025 WL 88831, at \*4–6 (S.D.N.Y. 2025) (excusing exhaustion requirement as futile).  Courts within the Sixth Circuit have applied the Ninth Circuit's test set forth in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983), for prudential exhaustion.  *See, e.g.*, *Lopez-Campos*, 797 F.Supp.3d at 778.  Under that test, courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id*.  These factors weigh against imposing prudential exhaustion here.  Statutory interpretation issues are properly addressed by federal courts.  Likewise, the Sixth Circuit has noted that due process challenges, such as those raised by Valdez Lopez, do not generally require exhaustion because the BIA cannot review such constitutional challenges.  *See, e.g.*, *Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006).

Alternatively, even when a district court might normally require prudential exhaustion, the court may waive the requirement.  One reason to do so is when requiring exhaustion would impose hardship, which is the case here.  Requiring exhaustion in this case would very likely subject Valdez Lopez to unreasonable delay, as appeals to the BIA of an immigration judge's decision denying bond often take six months or longer to resolve.  *Lopez-Campos*, 797 F.Supp.3d at 778–779 (citing *Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1245 (W.D. Wash.

7

2025)); *see also Velasco-Sanchez*, 2025 WL 3553672, at \*5 ("Exhaustion is also excused when delay means hardship.") (citation omitted). That time frame is inconsistent with the relief that Valdez Lopez seeks: immediate release on a Habeas Petition that is ripe for review. Finally, prudential exhaustion also is not required where it would be futile, as it almost certainly would be here. By its decision in *Matter of Yajure Hurtado*, the BIA has already rejected the statutory argument that Valdez Lopez presents to this Court. Respondents do not contend that the BIA is likely to reverse course on its *Matter of Yajure Hurtado* ruling.

For these reasons, the Court finds that prudential exhaustion is not required for Valdez Lopez to bring this action.

**B.      Claim for Violation of the INA**

The Court now turns to merits of the Habeas Petition. Valdez Lopez alleges that her continued detention without a bond hearing violates the INA. (Doc. 1 at PageID 17.) Her continued detention without a bond hearing is unlawful if her detention is governed by 8 U.S.C. § 1226(a). Conversely, her detention is lawful and mandatory if it is governed by 8 U.S.C. § 1225(b)(2)(A). As explained below, the Court is persuaded by the "overwhelming majority of fellow jurists from well over half of the federal judicial districts in the country" who have found that "[d]etention under § 1226(a) attaches where DHS encounters a noncitizen within the interior [of the United States] after admission or after a substantial period of continuous presence, whereas § 1225(b) applies only where the individual encountered is 'seeking admission' at the border or its functional equivalents." *Ortiz Guiterrez v. Raycraft*, No. 1:26-cv-69, — F.Supp.3d —, 2026 WL 456065, at \*3 (S.D. Ohio Feb. 18, 2026) (citing *Falcon v. Florentino,* No. 25-17164, at \*2 (D. N.J. Dec. 18, 2025) and collecting cases).

The Court starts with the text of the two INA detention provisions. When faced with a

8

question of statutory interpretation, the Court's "inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)). The Court must read each word in the statute in line with "its ordinary, contemporary, common meaning." *Ky. v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (quoting *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997)). If the plain text of the statute leaves ambiguity, courts turn to the canon that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (cleaned up); *see also Corley v. United States*, 556 U.S. 303, 314 (2009) ("statute(s) should be construed so that effect is given to all [their] provisions[.]") (citation omitted).

1. **8 U.S.C. § 1225(b)**

Section 1225(b)(2)(A) imposes mandatory detention of an "applicant for admission" who is "seeking admission" if an immigration officer has determined that the applicant is not entitled to admission in the United States:

> **§ 1225. Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing**
>
> * * *
>
> **(b) Inspection of applicants for admission**
>
> * * *
>
> **(2) Inspection of other aliens**
>
> **(A) In general**
>
> Subject to subparagraphs (B) and (C), in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). This statutory section defines an "applicant for

9

admission" in § 1225(a)(1) as an alien "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . . ." 8 U.S.C. § 1225(a)(1). Additionally, "admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13(A). "A noncitizen detained under [s]ection 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)." *Lepe v. Andrews*, 801 F.Supp.3d 1104, 1111 (E.D. Cal. 2025) (citation omitted). "Other than this limited exception (which is not implicated here), detention under § 1225(b)(2) is considered mandatory." *Lopez Benitez v. Francis*, 795 F.Supp.3d 475, 484 (S.D.N.Y. 2025) (cleaned up); *see also Lopez-Campos*, 797 F.Supp.3d at 777.

### 2. 8 U.S.C. § 1226

Section 1226(a), on the other hand, allows for discretionary detention, as shown by the use of the word "may":

> **§ 1226. Apprehension and detention of aliens**
>
> **(a) Arrest, detention, and release**
>
> On a warrant issued by the Attorney General, an alien *may be arrested and detained* pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on--
>
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; [ . . .]

8 U.S.C. § 1226(a) (emphasis added).[8] "Federal regulations provide that aliens detained under

---

[8] Subsection (c), recently amended by the Laken Riley Act, makes detention mandatory for aliens found inadmissible or deportable under certain provisions *and who have been* "charged with," "arrested for,"

§ 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also Lopez-Campos*, 797 F.Supp.3d at 777 (stating that noncitizens under § 1226(a) "have a right to request a custody redetermination (*i.e.,* bond hearing) before an Immigration Judge") (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)).  The Immigration Judge then "evaluates whether there is a risk of nonappearance or danger to the community." *Lopez-Campos*, 797 F.Supp.3d at 777.

### 3.      Interpretation

As of the writing of this decision, the Sixth Circuit has yet to decide whether 8 U.S.C. § 1225(b)(2)(A) or § 1226(a) governs detention under these circumstances.[9]  District court opinions within the Sixth Circuit have diverged, but the majority are in favor of the Petitioner's position.  *See*, *e.g.*, *compare*, *e.g.*, *Ortiz Guiterrez*, 2026 WL 456065, at *3–5 (joining majority of jurists to find § 1226(a) governed petitioner's detention and respondents' detaining the petitioner without bond violated his due process rights) *with Coronado v. Sec'y, Dep't of Homeland Sec.*, No. 1:25-cv-831, 2025 WL 3628229, at *12–14 (S.D. Ohio Dec. 15, 2025) (holding § 1225(b)(2)(A) governed the petitioner's detention and dismissing habeas petition).[10]

The Court concludes that the plain language of § 1226(a) more naturally aligns with Valdez Lopez's detention, while the application of § 1225(b)(2)(A) to her detention requires a strained statutory interpretation and is not persuasive.  The present-tense language used in

---

"convicted of," or admit to "having committed" certain listed crimes, but it does not apply here.  8 U.S.C. § 1226(c).

[9] The Court is mindful that the issue is on appeal in the consolidated appeal of *Juan Lopez-Campos v. Raycraft*, No. 25-1965; *Juan Sanchez Alvarez v. Noem*, No. 25-1969; *Jose Contreras-Cervantes v. Raycraft*, No. 25-1978; *Jesus Pizarro Reyes v. Raycraft*, No. 25-1982.

[10] One unofficial tally of district court opinions can be found at Politico, Our Running List of Judges Who Have Ruled on ICE's Mass Detention Policy, https://www.politico.com/news/2026/02/18/trump-judges-immigration-detention-00784614?_sp_pass_consent=true, (last viewed 3/30/2026).

§ 1225(b)(2)(A) does not match Valdez Lopez's status because she was not "seeking admission" when he was detained by Respondents eleven years after she entered the country. *See, e.g.*, *Lopez-Campos*, 797 F.Supp.3d at 781 ("Respondents completely ignore the term 'seeking' when attempting to broaden what 'seeking admission' means.  This implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.  Noncitizens who are just 'present' in the country—those like [Petitioner], who have been here for years upon years and never proceeded to obtain any form of citizenship … —are not 'seeking' admission."); *Lopez Benitez*, 795 F.Supp.3d at 488–489 (the phrase "seeking admission" necessarily implies present-tense action) (cleaned up); *Urrutia-Diaz v. Ladwig*, No. 2:25-cv-03098-TLP-atc, 2025 WL 3689158, at *6 (W.D. Tenn. Dec. 19, 2025) ("seeking" suggests action such that the noncitizen must actively be seeking admission and not simply residing in the country after entering unlawfully); *Del Villar v. Noem*, No. 4:25-cv-00137-GNS, 2025 WL 3231630, at *4–5 (W.D. Ky. Nov. 19, 2025) (finding that even if the petitioner might be an applicant for admission since he did not lawfully enter the country after inspection and authorization by immigration officer, the petitioner was not "seeking" admission since he had been in the country for more than 25 years) (quoting *Lopez-Campos*, 797 F.Supp.3d at 782).[11]

Further, continuing to look at the plain language of the statute, "[f]or section

---

[11] As the court in *Lopez Benitez* aptly analogized:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater.  Rather, that person would be described as already present there.  Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there.***

*Lopez Benitez*, 795 F.Supp.3d at 489.

1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Martinez v. Hyde*, 792 F.Supp.3d 211, 214 (D. Mass. 2025); *see also Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at \*7 (N.D. Ill. Oct. 24, 2025).  It does not appear that *any* of these findings were made here, since Valdez Lopez was not inspected by an immigration officer when she entered the country.  (Doc. 1 at PageID 11; Doc. 14 at PageID 59.)  After Valdez Lopez was taken into custody on November 5, 2025, DHS checked the box in the Notice to Appear charging her with being "an alien *present* in the United States who has not been admitted or paroled." (Doc. 14-2 at PageID 77 (emphasis added).)  DHS did not check the box for the alternative option of charging her with being "an arriving alien." (*Id*.)  It is inconsistent and strains credulity for Respondents to suggest that the two potential charges are categorically the same when the Notice to Appear form treats them as alternative and distinct categories.  *See Patel*, 2025 WL 2996787, at \*5.  As in *Patel*, the Government affirmatively treated Valdez Lopez as being detained under § 1226(a) on the Notice form, and it cannot now be heard to change its position to claim that she is detained under § 1225(b)(2)(A).  *See id*. at \*5–6.  In sum, under the first rule of statutory interpretation—to give plain, ordinary meaning to each word in the statutes at issue—this Court finds that Valdez Lopez's detention is governed by § 1226(a), not § 1225(b)(2)(A).

The Court's conclusion is buttressed by the Supreme Court's seminal opinion in *Jennings*, albeit in dicta.  The Supreme Court in *Jennings* drew a clear distinction between noncitizens detained while seeking admission and noncitizens detained after already being in the country:

> . . . U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).

583 U.S. at 289 (emphasis added); *see also*, *e.g.*, *Lopez-Campos*, 797 F.Supp.3d at 782 ("Put simply, Section 1225 applies to noncitizens 'arriving to the country' and Section 1226 governs detention of noncitizens 'already in the country.'" ) (quoting *Jennings*, 583 U.S. at 288); *Sanchez Alvarez*, 2025 WL 2942648, at *6 (W.D. Mich. Oct. 17, 2025) ("*Jennings* noted that § 1225 is part of the 'process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible.' *** Section 1226, however, applies to the process of 'arresting and detaining' aliens who are already living within the United States but are still subject to removal.") (quoting *Jennings*, 583 U.S. at 287), *on appeal* No. 25-1969 (6th Cir.); *Pizarro Reyes*, 2025 WL 2609425, at *5 ("Whereas § 1225 governs removal proceedings for 'arriving aliens,' § 1226(a) serves as a catchall…. § 1226(a) is the 'default rule' and 'applies to aliens already present in the United States.'") (quoting *Jennings*, 583 U.S. at 288, 301). *Jennings* supports the conclusion that Valdez Lopez, who entered the United States in 2014 and was residing in Ohio, is being detained under § 1226(a).

The Court holds that Respondents' refusal to provide Valdez Lopez with a bond hearing violates the INA, 8 U.S.C. § 1226(a). *See Jennings*, 583 U.S. at 306 (finding that regulations provide right to bond hearing for detentions under § 1226(a)); *Lopez-Campos*, 797 F.Supp.3d at 777 (same).

## C.     Due Process

Valdez Lopez also alleges that the failure to provide her with a bond hearing violates her substantive and procedural due process rights. (Doc. 1 at PageID 14–16.)  Respondents' primary

defense is that due process does not require a bond hearing for a noncitizen detained pursuant to

8 U.S.C. § 1225(b)(2)(A).  It argues that under Supreme Court precedent a noncitizen seeking

initial entry into the country has "only those [due process] rights regarding admission that

Congress has provided by statute."  *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103,

139–140 (2020).  That defense fails at the onset because the Court has held that Valdez Lopez's

detention is governed by 8 U.S.C. § 1226(a), under which bond hearings are provided, and not

by § 1225(b)(2)(A).  This Court's holding is consistent with *Thuraissigiam* insofar as the

Supreme Court also noted that noncitizens "who have established connections in this country

have due process rights in deportation proceedings."  *Id.* at 107.

This Court is persuaded that detaining Valdez Lopez under § 1225(b)(2)(A) deprived

her—and continues to deprive her—of due process rights under the Fifth Amendment.  As the

court in *Ortiz Gutierrez* stated:

> "Non-punitive detention in the immigration context violates the Due Process
> Clause," *Padilla v. United States Immigr. & Customs Enf't*, 704 F.Supp.3d 1163,
> 1172 (W.D. Wash. 2023), absent "adequate procedural protections" or "a special
> justification" outweighing a petitioner's liberty interest, *Zadvydas*, 533 U.S. at
> 690, 121 S.Ct. 2491; *see Ariza v. Noem*, No. 4:25-CV-165, 2025 WL 3722014, at
> *10, 2025 U.S. Dist. LEXIS 265012, at *28 (W.D. Ky. Dec. 23, 2025) (noting
> that "[t]he Due Process Clause extends to all persons regardless of status,"
> including noncitizens). "Freedom from imprisonment—from government custody,
> detention, or other forms of physical restraint—lies at the heart of the liberty that
> Clause protects." *Zadvydas*, 533 U.S. at 690, 121 S.Ct. 2491.

*Ortiz Gutierrez*, 2026 WL 456065, at *4.  As such, "detention [under § 1226(a)] is discretionary

and constitutionally constrained by due process."  *Id*. (citation omitted).  The Court finds that

Respondents violated Valdez Lopez's due process rights by enforcing mandatory detention under

§ 1225(b)(2).  The Court thus turns to the matter of what process is due to Valdez Lopez.

Courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to

determine the adequacy of the process in the context of civil immigration detention.  *See, e.g.*,

15

*United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020); *Wali v. Raycraft*, No. 1:26-cv-145, 2026 WL 496707, at *2 (S.D. Ohio Feb. 23, 2026); *Ortiz Gutierrez,* 2026 WL 456065, at *4–5; *Azalyar v. Raycraft*, No. 1:25-cv-916, — F.Supp.3d —, 2026 WL 30741, at *4–5 (S.D. Ohio Jan. 2, 2026).  *Mathews* instructs the Court to consider three factors: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail.  424 U.S. at 335.  Two of the three factors favor Valdez Lopez.

The first *Matthews* factor, the private interest that will be affected by the official action, strongly favors Valdez Lopez.  As noted above, at the heart of the Fifth Amendment is the right to be free from deprivation of liberty, and her liberty is at stake.  Valdez Lopez has a significant private interest in avoiding detention, and especially detention indistinguishable from criminal incarceration.  According to the Habeas Petition, Valdez Lopez is the mother of four children who are United States citizens.  One of her children has a serious medical condition.  She has resided in the United States since July 2014 with no criminal history until her recent misdemeanor conviction for obstruction of justice.  Valdez Lopez's detention without a bond hearing impinges on her liberty.

The second factor also favors Valdez Lopez.  An individualized bond redetermination hearing provides a mechanism for the Immigration Judge to determine whether Valdez Lopez poses a flight risk or danger to the community, thereby reducing the risk of erroneous deprivation of her right not to be deprived of liberty without due process.  *See, e.g.*, *Lopez-Campos*, 797 F.Supp.3d at 785.

Finally, the last factor is neutral and does not favor either side.  The Government has a

16

legitimate interest in ensuring noncitizens' appearance at removal proceedings and prevent harm to the community, but nothing in the record before this Court suggests that detention of Valdez Lopez is necessary to further the Government's interest.  Nor has the Government showed that a due process-compliant individualized bond hearing would impose undue administrative or financial costs.  In fact, the Government provided bond hearings to detained noncitizens like Singh for almost thirty years before DHS issued an Interim Guidance Regarding Detention Authority for Applicants for Admission on July 8, 2025 changing its detention policy.  *See* https://perma.cc/5GKM-JYGX.

In sum, two of the three *Mathews* factors favor Valdez Lopez and compel this Court to hold that her current, continued detention under § 1225(b)(2)(A) violates her Fifth Amendment right to due process.  *See Urrutia-Diaz*, 2025 WL 3689158, at *7–8 (all three *Mathews* factors weigh in petitioner's favor); *Del Villar*, 2025 WL 3231630, at *6–7 (all three factors favor the petitioner); *Barco Mercado*, 2025 WL 3295903, at *11–12 (addressing due process claim); *see also Lopez Benitez*, 795 F.Supp.3d at 491–496 (discussing due process and *Mathews*); *Lopez-Campos*, 797 F.Supp.3d at 784–785 (applying *Mathews*); *Chavez v. Dir. of Detroit Field Office*, No. 4:25-cv-2061, 2025 WL 3187080, at *8 (N.D. Ohio Nov. 14, 2025) (summary conclusion of due process violation and collecting cases).

The Court holds that imposing mandatory detention upon Valdez Lopez under 8 U.S.C. § 1225(b)(2)(A) without a bond hearing violates Valdez Lopez's due process rights.

**D.    Attorney Fees and Costs**

Valdez Lopez seeks attorney fees and costs.  (Doc. 1 at PageID 17.)  The Equal Access to Justice Act permits a court to award "reasonable fees and expenses of attorneys, in addition to costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action

brought by or against the United States . . . ." 28 U.S.C. § 2412(b). The Court will consider a motion for any attorneys' fees and costs filed in conformity with the procedures set forth in the statute and the local rules. *See, e.g.*, *Ichich Xo v. Daley*, No. 25-176-DLB, 2025 WL 3657230, at *8 (E.D. Ky. Dec. 17, 2025); *Padilla-Ugsha v. Ladwig*, No. 2:25-cv-03045-TLP-cgc, — F.Supp.3d —, 2025 WL 3638007, at *8 (W.D. Tenn. Dec. 15, 2025).

## III.    CONCLUSION

For the reasons stated above, the Court **FINDS** that Valdez Lopez is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) but instead is detained under 8 U.S.C. § 1226(a). Therefore, detaining her without a bond hearing violates her statutory rights and due process rights under the Fifth Amendment. The Court **ORDERS that within seven days of entry of this Order,** Respondents shall either (1) provide Valdez Lopez with a due process compliant, individualized bond redetermination hearing before an Immigration Judge, at which the Government shall bear the burden of persuasion justifying her continued detention; or (2) release Valdez Lopez from custody. If Respondents choose to provide a bond hearing in lieu of releasing Valdez Lopez from custody, then:

(1) Respondents shall provide a copy of this order to the Immigration Judge before any hearing;

(2) the Immigration Judge shall have jurisdiction over the matter and be empowered to grant bond;

(3) Respondents shall bear the burden of persuasion of justifying Petitioner's continued detention and adduce clear and convincing evidence that Petitioner is a danger to the community. *See Black v. Decker*, 103 F.4th 133, 155 (2d Cir. 2024), *reh'g en banc denied* (Oct. 24, 2025); *Soto-Medina v. Lynch*, No.

18

1:25-CV-1704, 2026 WL 161002, at *9–11 (W.D. Mich. Jan. 21, 2026);

*Azalyar v. Raycraft*, No. 1:25-cv-916, — F.Supp.3d —, 2026 WL 30741, at *5 (S.D. Ohio Jan. 2, 2026); and

(4) the Immigration Judge shall consider whether less restrictive alternatives to detention can reasonably address the Government's interest, as well as Petitioner's "ability to pay when setting any bond amount." *M.P.L. v. Arteta*, No. 25-CV-5307, 2025 WL 2938993, at *1 (S.D.N.Y. Oct. 16, 2025).

The Court further **ORDERS that within ten days of entry of this Order**, Respondents shall file a report informing the Court whether and when a due process compliant, bond redetermination hearing was held or whether and when Valdez Lopez was released from custody.

**IT IS SO ORDERED**.

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court

19